UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JESHKAIF DOMINIQUE BASS,

    Petitioner,

              Case No. 1:18-cv-215

v.

              Honorable Robert J. Jonker

JACK KOWALSKI,

    Respondent.
_____/

## OPINION

    This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

I. Factual allegations

Petitioner Jeshkaif Dominique Bass is incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon County, Michigan. On May 8, 2015, a Muskegon County Circuit Court jury found Petitioner guilty to one count of assault with intent to murder, Mich. Comp. Laws § 750.83, one count of being a felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and two counts of possessing a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. On June 10, 2015, the trial court sentenced Petitioner to imprisonment for 27 to 49 years for the assault conviction, 1 to 20 years for the felon-in-possession conviction, and 2 years for each of the felony-firearm convictions.

On February 26, 2018, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner placed his petition in the prison mailing system on February 26, 2018. (Pet., ECF No. 1, PageID.13.)

The petition raises two grounds for relief, as follows:

I. THE TRIAL COURT DEPRIVE[D] [PETITIONER] OF HIS CONSTITUTIONAL RIGHT TO A TRIAL BY AN IMPARTIAL JURY WHERE IT PERMITTED THE PROSECUTION TO RETROACTIVELY USE A PEREMPTORY CHALLENGE AGAINST A JUROR WHO APPEARED SYMPATHETIC TO THE DEFENSE, AFTER THE STATE HAD BEGUN TO PUT ON EVIDENCE. ACCORDINGLY [PETITIONER] MUST [] BE GRANTED A NEW TRIAL.

II. THE TRIAL COURT VIOLATED [PETITIONER'S] CONSTITUTIONAL RIGHTS TO CONFRONT THE WITNESS AGAINST HIM IN A CRIMINAL PROCEEDING WHERE IT IMPERMISSIBLY DETERMINED A WITNESS TO BE UNAVAILABLE AND ADMITTED PRELIMINARY EXAMINATION TESTIMONY TO BE READ TO THE JURY BY A PROSECUTOR.

(Pet., ECF No.1-2, PageID.71, 75.)

### A. Background Facts

The Michigan Court of Appeals summarized the relevant background facts, which are not disputed by Petitioner:

> This case arises from an altercation between defendant and the victim, Steven Bailey. Defendant produced a handgun during an argument and shot Bailey non-fatally. Numerous witnesses testified to having witnessed the altercation. Two witnesses testified to seeing defendant fire the gun.
>
> On the morning of the second day of trial, Juror Two indicated to the court clerk that he had had a "change of heart." The trial court spoke to the juror outside the presence of the rest of the jury. The juror stated that he was a member of the Jehovah's Witness faith and that he had religious or moral concerns about sitting in judgment over defendant. The prosecution asked that the juror be excused. Defense counsel expressed some concerns about a mistrial if another juror were to be excused later in the trial, but ultimately stated, "[b]eyond that I would leave it to the Court's discretion." The trial court excused the juror and the trial continued with 12 jurors (thus, with no alternate jurors remaining). On that same day, the trial court received information regarding another juror experiencing emotional issues. According to Aron McConaughy, a deputy with the Muskegon County Sheriff's Department, he heard someone crying in the parking lot during the trial's lunch break. McConaughy testified that, upon further inspection, he realized that it was a juror. McConaughy stated that when he asked the juror what was wrong, she explained that her husband had died eight months before and that she was feeling "emotionally distraught." McConaughy testified that the juror indicated that she did not want to discuss the issue with him further and that she had not approached him directly to talk. The trial court did not call the juror into the courtroom to inquire about this incident and proceeded with the trial.
>
> At trial, the prosecution moved to introduce the preliminary examination testimony of Lameke Strickland, the victim's sister, who had testified at the preliminary examination hearing that she had seen defendant fire the gun. The prosecution argued that Strickland was an unavailable witness whose prior testimony was admissible under MRE 804(b)(1). In support of its argument that it had used due diligence in attempting to procure Strickland to testify at trial, the prosecution offered the testimony of two police officers, John Holtz of the Muskegon County Sheriff's Department and Steven Winston of the Muskegon Heights Police Department. Holtz testified that he had attempted without success to serve Strickland with a subpoena by attempting to locate her at her last known address, by searching various databases and visiting the other addresses associated with her name, and by speaking with several members of her family. Holtz testified that he had performed all of his searches using the surname "Bailey," and did not search using the surname "Strickland," because that name was not on the subpoena.

> Winston testified that he checked a database for Strickland using both of the surnames. Winston also contacted Strickland's mother, who told him that Strickland was out of town and would not be back for several weeks, although she would not reveal where Strickland was. The trial court found that the prosecution had shown due diligence, found Strickland unavailable, and allowed her preliminary examination testimony to be read for the jury.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.28-29 (footnote omitted).)

### B. Procedural Background

Petitioner filed a direct appeal of his convictions to the Michigan Court of Appeals. On appeal, he raised the same two issues he now presents in his habeas petition. In an unpublished opinion issued on October 18, 2016, the court of appeals rejected both appellate grounds and affirmed Petitioner's convictions. (*Id.*, PageID.28-32.) Petitioner sought leave to appeal to the Michigan Supreme Court, again raising the same two issues. The supreme court denied leave to appeal on May 31, 2017, because it was not persuaded that the questions presented should be reviewed by the court. (Mich. Op., ECF No. 1-1, PageID.70.)

### II. AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented

4

in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.     Ground I:  Denial of Impartial Jury

In his first ground for habeas relief, Petitioner contends that he was denied his right to a trial by an impartial jury, when the trial court dismissed a juror after the prosecution had begun to present its evidence. He also claims that he was denied an impartial jury when a second juror, who was seen crying during a recess, was not questioned by the court and was not excused from the jury.

The Michigan Court of Appeals addressed Petitioner's claims, as follows:

> Defendant first argues on appeal that the trial court deprived defendant of his constitutional right to a trial by an impartial jury when it dismissed Juror Two. We disagree. In the first instance, this issue has been waived. Waiver is "the intentional relinquishment or abandonment of a known right." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). A defendant's right to challenge a trial court's decision to excuse a juror from deliberations may be waived. *People v Tate*, 244 Mich App 553, 559; 624 NW2d 524 (2001). When defense counsel leaves a decision to the trial court's discretion, the challenge has been waived. *People v Sardy*, 313 Mich App 679, 719; ___ NW2d ___ (2015). Here, when discussing whether to dismiss the juror, defense counsel expressed concern that a mistrial could result if any other jurors experienced issues, but then agreed to leave the decision whether to dismiss the juror "to the Court's discretion." Accordingly, defendant has waived the issue now raised and there is no claim of error for this Court to review. *People v Carter*, 462 Mich 206, 219; 612 NW2d 144 (2000).

6

> Further, even if the argument were not waived, defendant has not demonstrated plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130, (1999). Trial courts have discretion to excuse jurors "[s]hould any condition arise during the trial of the cause which in the opinion of the trial court justifies the excusal of any of the jurors." MCL 768.18. Although a trial court may not dismiss jurors arbitrarily or without factual justification, *People v Van Camp*, 356 Mich 593, 605; 97 NW2d 726 (1959), it has "broad discretion" to reduce the number of empaneled jurors to 12. [*People* v] *Harvey*, 167 Mich App [734,] 745[; 423 NW2d 335, 340 (1988)]. Here, the record supports that the trial court provided a factual justification for its decision to dismiss the juror, and did not dismiss the juror arbitrarily or based on the trial court's personal inclinations. *Van Camp*, 356 Mich at 605. The trial court acted within its discretion in dismissing the juror, and defendant has not established that the trial court's dismissal of the juror violated his right to an impartial jury. See, e.g., *People v Mahone*, 294 Mich App 208, 217; 816 NW2d 436 (2011). And in the end, defendant was tried by a jury of twelve. Although defendant argues that the dismissal of Juror Two impacted the trial court's decision not to inquire further into the circumstances of the other juror, nothing in the record indicates that the other juror could not be fair and impartial just because she was observed crying over a lost spouse while on her lunch break. Mere speculation as to a different outcome is not sufficient to show prejudice. *People v Avant*, 235 Mich App 499, 508; 597 NW2d 864 (1999).

(Mich. Ct. App. Op., ECF No. 1-1, PageID.29-30.) In other words, after expressly noting Petitioner's default in failing to object, the Michigan Court of Appeals then reviewed Petitioner's claim for plain error, finding none.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th

7

Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

Here, in the last reasoned state-court decision, the Michigan Court of Appeals expressly relied on the procedural rule that a defendant who waives an objection to the trial court's proposed decision bars that defendant from raising the issue on appeal. Although the Michigan Court of Appeals then reviewed Petitioner's claim for plain error, in this circuit, "plain error review does not constitute a waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000) (citations omitted); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000); *see also Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998) (state court's alternative holding on the merits does not require federal court to disregard the procedural bar); *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991) (same); *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989) (claim is defaulted even where the state court may excuse the default for "manifest injustice"); *Federico v. Yukins*, No. 93-2424, 1994 WL 601408, at *3-*4 (6th Cir. Nov. 2, 1994) (same, for "miscarriage of justice"). The state court therefore relied on a state procedural bar in denying Petitioner's claim.

Moreover, the state procedural rule is adequate and independent, because it was "firmly established and regularly followed" at the time of the asserted procedural default. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). In *People v. Kowalski*, 803 N.W.2d 200 (Mich. 2011), the Michigan Supreme Court reiterated its longstanding position that "'[o]ne who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error.'" *Id.* at 211 (quoting *People v. Carter*, 612 N.W.2d 144, 149 (Mich. 2000)); *see also People v. Carines*, 597 N.W.2d 130, 137-139 (Mich. 1999) (holding that unpreserved claims of error, whether

8

constitutional or nonconstitutional, are subject to review solely for plain error) (citing *United States v. Olano,* 507 U.S. 725 (1993) (applying plain-error review to forfeited nonconstitutional error), and *Johnson v. United States,* 520 U.S. 461 (1997) (holding that plain-error review applies to forfeited constitutional review)). Thus, the waiver rule was well established at the time of Petitioner's trial. Moreover, a rule designed to arm trial judges with the information needed to rule reliably "serves a governmental interest of undoubted legitimacy." *Lee v. Kemna*, 534 U.S. 362, 385 (2002). Petitioner's failure to comply with the state's independent and adequate state procedural rule caused him to default his claims in state court. *See Wainwright v. Sykes*, 433 U.S. 72, 86-88 (1977); *Taylor v. McKee*, 649 F.3d 446, 450 (6th Cir. 2011); *Awkal v. Mitchell*, 613 F.3d 629, 648 (6th Cir. 2010); *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Factors that establish cause to excuse a procedural default may include interference by officials, attorney error rising to the level of ineffective assistance of counsel, and a showing that the factual or legal basis for a claim was not reasonably available. *Cvijetinovic v. Eberlin*, 617

9

F.3d 833, 837 (6th Cir. 2010) (citing *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004) (citing *McClesky v. Zant*, 499 U.S. 467, 493-94 (1991) (quotations omitted))). In addition, a claim may be sufficiently novel to excuse a default if, at the time of the default, the basis for the legal claim was not yet in existence. *See Cvijetinovic*, 617 F.3d at 833, 837-38 (citing *Reed v. Ross*, 468 U.S. 1, 16 (1984), and *Engle v. Isaac*, 456 U.S. 107, 130-33 (1982)).

Petitioner utterly fails to allege cause that would excuse his default. Moreover, even were the Court to assume that Petitioner intended to allege that his trial attorney rendered ineffective assistance of counsel in waiving the objection, Petitioner would not be entitled to relief on that ground. To serve as cause to excuse the default, a claim of ineffective assistance of counsel must itself be properly exhausted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001); *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001). Petitioner has never raised a claim of ineffective assistance of counsel in the state courts. The question therefore is unexhausted and may not serve as cause to excuse Petitioner's procedural default. *Id.* Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle*, 456 U.S. at 134 n.43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985). Moreover, Petitioner fails to allege or show that he is actually innocent under the standard set forth in *Schlup*, 513 U.S. at 327. Because Petitioner cannot overcome his procedural default, review of his first ground for relief is not available in this habeas proceeding.

Nevertheless, even if Petitioner could overcome the procedural bar to his claim, he would not be entitled to relief. First, to the extent that Petitioner suggests that the trial court violated state law in excusing the juror, his claim is not cognizable on habeas review. The Michigan Court of Appeals concluded in its alternate holding that the trial court reasonably exercised its discretion under Mich. Comp. Laws § 768.18, which permits the dismissal of a juror

"[s]hould any condition arise during the trial of the cause which in the opinion of the trial court justifies the excusal of any of the jurors." *Id.* It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). As a consequence, Petitioner is not entitled to habeas relief on the application of state law.

In addition, Petitioner fails to demonstrate that the court of appeals' determination was either contrary to or an unreasonable application of clearly established Supreme Court precedent. The Supreme Court has largely addressed the question of unconstitutional juror dismissal in the context of death-penalty cases. In *Wainwright v. Witt*, 469 U.S. 412 (1985), the Supreme Court held that the proper standard for excluding a juror for cause on the basis of his views concerning the death penalty is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Id.* at 424 (quoting *Adams v. Texas*, 448 U.S. 38, 45 (1980)). In addition, the Supreme Court consistently has recognized that a federal habeas court owes double deference to trial-court determinations of whether the juror should be excused. *White v. Wheeler*, ___ U.S. ___, 136 S. Ct. 456, 460 (2015). "The question is not whether the trial judge was wrong or right in his determination of impartiality, but merely whether his decision was 'fairly supported by the record.'" *Bowling v. Parker*, 344 F.3d 487, 519 (6th Cir. 2003) (quoting *Witt*, 469 U.S. at 433). A trial court's finding "may be upheld even in the absence of clear statements from the juror that

he or she is impaired." *Uttecht v. Brown*, 551 U.S. 1, 7 (2007). And "when there is ambiguity in the prospective juror's statements, 'the trial court . . . [is] entitled to resolve it in favor of the State.'" *Id.* (quoting *Witt*, 469 U.S. at 434).

Petitioner falls short of overcoming the double deference owed to the state court's decision to include the juror. Petitioner makes no argument that the court of appeals misstated the facts surrounding Juror Two's dismissal. On those facts, the juror approached the court clerk to express his change of heart about whether he could sit in judgment over Petitioner. Such an expression by a juror of his inability to perform his duties falls squarely within the standard set forth in *Witt*, 469 U.S. at 424. The court's decision to dismiss the juror therefore clearly was reasonable under the circumstances.

Petitioner's challenge to the judge's handling of the second juror also falls short of demonstrating constitutional error. The Supreme Court consistently has held that where no "member of [a defendant's] jury was removable for cause," his "jury was impartial for Sixth Amendment purposes." *Rivera v. Illinois*, 556 U.S. 148, 158-59 (2009) (citing *Ross v. Oklahoma*, 487 U.S. 81, 86-91 (1988) (holding that "because no member of the jury as finally composed was removable for cause, [the Court] found no violation of [the defendant's] Sixth Amendment right to an impartial jury or his Fourteenth Amendment right to due process")); *see also United States v. Martinez–Salazar*, 528 U.S. 304, 307, 317 (2000) (holding that if a defendant was convicted "by a jury on which no biased juror sat, [he] could not tenably assert any violation of his . . . right to due process") (internal quotations omitted).

Petitioner neither argues nor demonstrates any basis for concluding that the second juror was biased or removable for cause. Instead, as the Michigan Court of Appeals recognized, the juror was crying during lunch break about the death of her husband some months earlier, a fact

12

wholly unrelated to her ability to be impartial in Petitioner's trial. In addition, the juror never approached a court official to express a concern about her jury service, and she specifically indicated that she did not want to talk further to the deputy who approached her. On these facts, Petitioner fails to demonstrate that the juror was biased or subject to challenge for cause. The state-court decision therefore was either contrary to or an unreasonable application of established Supreme Court precedent.

In sum, Petitioner's first habeas ground is both procedurally defaulted and without merit.

## IV. Ground II: Preliminary Examination Testimony

In his second ground for habeas relief, Petitioner argues that he was denied his rights under the Confrontation Clause of the Sixth Amendment when the court allowed introduction of the preliminary examination testimony of Lameke (Bailey) Strickland, because she was unavailable at trial. Petitioner also appears to argue that the prosecution did not sufficiently demonstrate that it had exercised the requisite diligence to warrant admission under Michigan Rule of Evidence 802.

The Michigan Court of Appeals thoroughly analyzed Petitioner's claim under both the Michigan court rule and the Confrontation Clause:

> Defendant next argues that the trial court abused its discretion by finding Strickland to be unavailable and by admitting her testimony from the preliminary examination hearing. He also argues that the admission of Strickland's preliminary examination testimony violated his right to confront the witness. We disagree. We review for an abuse of discretion a trial court's decision to admit evidence. *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). We review de novo a claim that the admission of evidence violated the defendant's right of confrontation. *People v Jackson*, 483 Mich 271, 277; 769 NW2d 630 (2009).
>
> Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is not admissible at trial unless it meets the

13

requirements of an exception set forth in the Michigan Rules of Evidence. MRE 802; *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007). In general, former testimony is not excluded by the hearsay rule where the declarant is unavailable. MRE 804(b)(1). A witness is unavailable when he "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown." MRE 804(a)(5). Thus, the test for whether a witness is unavailable is whether the prosecution has shown that it used due diligence in its attempt to locate the witness for trial. *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *Id.*

The trial court did not abuse its discretion when it found that Strickland was unavailable for trial. *Unger*, 278 Mich App at 216. Initially, when attempting to locate Strickland, Holtz checked several databases using "Bailey" only. However, the record supports that both names were ultimately checked in a database before trial. The record also supports that two police officers attempted to locate Strickland by checking various addresses associated with her and by speaking with her family members. Ultimately, neither police officer was able to locate Strickland for trial. "Due diligence is the attempt to do everything reasonable, not everything possible," to secure the presence of a witness at trial. *People v George*, 130 Mich App 174, 178; 342 NW2d 908 (1983). The record supports that the prosecution used diligent, good-faith efforts to procure Strickland's presence at trial. Accordingly, the trial court did not abuse its discretion in finding Strickland unavailable pursuant to MRE 804(a)(5).

The trial court also did not abuse its discretion when it found Strickland's testimony admissible under MRE 804(b)(1). *Unger*, 278 Mich App at 216. Under MRE 804(b)(1), former testimony "given as a witness at another hearing of the same or a different proceeding," is admissible at trial "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." To be admissible, the testimony must have been made "at another hearing." MRE 804(b)(1); *People v Farquharson*, 274 Mich App 268, 272; 731 NW2d 797 (2007). Also, the party against whom the testimony is offered must have had an opportunity and similar motive to develop the testimony. Id. at 275. "Whether a party had a similar motive to develop the testimony depends on the similarity of the issues for which the testimony was presented at each proceeding." *Id.*

Here, Strickland's testimony came from defendant's preliminary examination hearing, and therefore her testimony was made "at another hearing" as required by MRE 804(b)(1). At both the preliminary examination and at trial, the prosecution sought to show that defendant had shot the victim, and defendant's counsel was motivated to prove that defendant was not the shooter. Defense

> counsel had an opportunity to cross-examine Strickland at the preliminary examination hearing. Defense counsel questioned Strickland about her ability to view the shooting, her memory of the events, her relationship with the victim, and her actions after the shooting. Because the same issues were involved at the preliminary examination and at trial, defendant had an opportunity and similar motive to develop the testimony. *Farquharson*, 274 Mich App at 275. Accordingly, the trial court did not abuse its discretion in admitting Strickland's testimony under MRE 804(b)(1). *Unger*, 278 Mich App at 216.
>
> Defendant has also failed to establish that the use of Strickland's preliminary examination testimony violated his rights under the Confrontation Clause; US Const, Am VI; Const 1963, art 1, § 10. "The admission of testimony under MRE 804(b)(1) often raises issues concerning a defendant's right to confront witnesses against him." *Farquharson*, 274 Mich App at 277. "The Confrontation Clause of the Sixth Amendment bars the admission of 'testimonial' statements of a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness." *People v Walker (On Remand)*, 273 Mich App 56, 60-61; 728 NW2d 902 (2006). "Former testimony is admissible at trial under both MRE 804(b)(1) and the Confrontation Clause as long as the witness is unavailable for trial and was subject to cross-examination during the prior testimony." *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009). Because Strickland was unavailable under MRE 804(a)(5) and was subject to cross-examination at defendant's preliminary examination hearing, defendant's right of confrontation was not violated. *Id.*; *Jackson*, 483 Mich at 277.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.30-32.)

As previously discussed, to the extent that Petitioner suggests that Strickland's preliminary-examination testimony should have been excluded under Mich. R. Evid. 804(b)(1), his claim is not subject to review in this habeas proceeding. This Court lacks authority to correct a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76. The decision of a state court on a state-law issue is binding on a federal court. *Wainwright*, 464 U.S. at 84. As a result, Petitioner's claim under Mich. R. Evid. 804(b)(1) is noncognizable.

Moreover, Petitioner cannot show that he is entitled to relief on his confrontation claim. The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const., Am. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The

15

central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

The Sixth Circuit has noted that there exists "some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes." *Al-Timimi v. Jackson*, 379 F. App'x 435, 437-38 (6th Cir. 2010) (citing, *inter alia*, *Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007) (doubting whether "the opportunity to question a witness at a preliminary examination hearing satisfies the pre-*Crawford* understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination") (internal quotation marks omitted)). But the Supreme Court has never held that a defendant is denied his rights under the Confrontation Clause when a witness is unavailable at trial and the court admits the witness's preliminary examination testimony. *Id.*, 379 F. App'x at 438. As a result, in the context of a federal court sitting on habeas review, the Sixth Circuit has concluded that a state court's determination that testimony from the preliminary examination was properly admitted was not an unreasonable application of clearly established Supreme Court precedent. *Id.*, 379 F. App'x at 438-440; *see also Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014) (citing *Al-Timimi* with approval and upholding on habeas review the admission of testimony from the petitioner's own preliminary examination).

Petitioner does not dispute the court of appeals' finding that Petitioner both possessed and exercised his opportunity to cross-examine Ms. Strickland at the preliminary

16

examination on the very subjects in issue at trial. He therefore fails to overcome the presumption of correctness accorded to the state court's determination about defendant's opportunity for cross-examination at the preliminary examination. 28 U.S.C. § 2254(e)(1); *Sumner*, 449 U.S. at 546. Further, given that no Supreme Court precedent bars the use of the preliminary examination testimony in these circumstances, *see Al-Timimi*, 379 F. App'x 437-38, Petitioner fails to demonstrate entitlement to habeas relief on his second ground.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action

does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   April 13, 2018           /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  CHIEF UNITED STATES DISTRICT JUDGE